UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BIOLUMIX, INC., ET AL.,

  Plaintiffs/Counter-Defendants,

v.

CENTRUS INTERNATIONAL, INC.,

  Defendant/Counter-Plaintiff.

_____/

Case No. 08-11418

SENIOR UNITED STATES DISTRICT JUDGE
ARTHUR J. TARNOW

MAGISTRATE JUDGE R. STEVEN WHALEN

**ORDER DENYING IN PART WITHOUT PREJUDICE DEFENDANT'S MOTION TO SET ASIDE SUMMARY JUDGMENT [301] AND DENYING OBJECTIONS [327] AND GRANTING MOTIONS TO SUPPLEMENT RECORD [355] AND [401] AND DENYING MOTION TO STRIKE [347]**

Now before the Court are Defendant Centrus International, Inc.'s Motion to Set Aside Summary Judgment [301] and Defendant's Objections [327] to the Special Master's Order [322] denying without prejudice Defendant's Motion. For the reasons stated below, Defendant's Objections and Motion to Set Aside Summary Judgment are DENIED, IN PART, WITHOUT PREJUDICE. Defendant's Motions to Supplement the Record [355] and [401] are GRANTED. Defendant's Motion to Strike [347] is DENIED.

## I. PROCEDURAL HISTORY

This motion stems from the Court's Order [264] of December 3, 2012, in which the Court DENIED Defendant's Motion for Summary Judgment [209] and GRANTED IN PART Plaintiffs' Motion for Summary Judgment [212]. Specifically,

the Court granted summary judgment to Plaintiffs as to non-infringement of the "'576 patent," and denied summary judgment to both parties as to the '873 patent.

On December 17, 2012, Defendant filed a Motion for Reconsideration [276] of the Court's Order. Prior to the Court's ruling on said Motion for Reconsideration, on February 22, 2013, Defendant filed the instant Motion to Set Aside Summary Judgment [301]. On March 26, 2013, the Special Master issued an Order [322] denying without prejudice Defendant's Motion to Set Aside, and permitting Defendant's to re-open the depositions of Ruth and Gideon Eden to inquire into the relationship between BioLumix and Tnuva, an Israeli company with which the Edens do business.

On April 9, 2013, Defendant filed Objections [327] to the Special Master's ruling. Defendant argues that the Court should set aside its ruling of summary judgment as to the '576 patent and re-open broad discovery. Plaintiffs filed a Response [334] on April 16, 2013. On May 20, 2013, Defendant filed a Motion to Supplement [355] its objections. Plaintiffs filed a Response [363]. On July 26, 2013, Defendant filed an additional Motion for Leave to File Second Supplement [401] to its objections. Plaintiffs filed a Response [408].

Defendant filed a third Motion to Supplement [421] on August 16, 2013. The Court will not consider said motion at this time.

## II. STANDARD

Defendant moves to set aside summary judgment pursuant to Fed. R. Civ. P. 60(b). Specifically, Defendant moves to set aside summary judgment pursuant to Fed. R. Civ. P. 60(b)(2), based upon "newly discovered evidence," and Fed. R. Civ. P. 60(b)(3), based upon "misconduct by an opposing party. . . ."

A party seeking relief under Fed. R. Civ. P. 60(b)(2) must prove the grounds for relief by "clear and convincing evidence." *Info-Hold v. Sound Merchandising, Inc.*, 538 F.3d 448, 454 (6th Cir. 2008). This high standard exists because of the "public policy favoring finality of judgments and termination of litigation." *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001).

When a party moves to set aside judgment pursuant to Fed. R. Civ. P. 60(b)(3), based on "(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," the moving party must first demonstrate "by clear and convincing evidence that misbehavior falling into one or more of the three categories set out in Rule 60(b)(3) has occurred." *Venture Indus. Corp. v. Autoliv ASP, Inc.*, 457 F.3d 1322, 1333 (Fed. Cir. 2006) (quoting *Jordan v. Paccar, Inc.*, 1996 WL 528950, at *8 (6th Cir. 1996)). Once misbehavior has been established by clear and convincing evidence, "the damaging effect of the misbehavior

should be presumed in *all* cases." *Jordan*, 1996 WL 528950, at *8. Then "the non-moving party should be permitted to demonstrate by clear and convincing evidence that the misbehavior which occurred had *no prejudicial* effect on the outcome of the litigation." *Id.* (emphasis in original).

This Court reviews *de novo* all objections to findings of fact and conclusions of law made or recommended by the Special Master. Fed R. Civ. P. 53(f).

### III. ANALYSIS

### A. Newly-Discovered Evidence

Fed. R. Civ. P. 60(b)(2) permits relief from judgment if a party presents newly-discovered evidence which by reasonable diligence could not have been discovered at the time of judgment. In order to succeed in a 60(b)(2) motion a party must demonstrate (1) that it exercised due diligence in obtaining the information, and (2) that the evidence is material and clearly would have produced a different result if presented before the original judgment. *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998). Defendant sets forth several pieces of evidence that it claims are sufficient to meet this standard, presented first in its initial motion, as well as in two supplemental motions. In evaluating these pieces of evidence, the Court finds that the first factor, due diligence, has been met, given the troubling accusations of discovery misconduct by Plaintiffs.

## I. E-mails between Edens and Tnuva

The first piece of evidence is presented in Defendant's Objections [327] to the Special Master's Order denying without prejudice Defendant's Motion to Set Aside Summary Judgment [327]. Defendant presents a number of e-mails between Plaintiffs Ruth and Gideon Eden and Shura Berman, a representative of Tnuva, an Israeli dairy company with which Plaintiffs did business.

The heart of Defendant's argument is that Plaintiffs "orchestrated several trials of the BioLumix vials . . . in the ['576 patent] device" to "validate the BioLumix system . . . ." Def.'s M. [301] at 4. The Court has extensively reviewed the e-mails between the Edens and Tnuva.

Defendant's argument is not supported by the evidence. In one e-mail, entitled "TEST RE: Yeast and Mold," dated December 6, 2008, Ruth Eden notes that, in reference to the results of one of the yeast-detection tests sent by Berman "[t]he pictures of the curve looked good. However, please remember that I do not have a Soleris system. Our instrument is better tuned to read our vials and we have a different algorithm. Therefore it is difficult for me to advise you on the algorithm to be used." TNUVA at 000147. Eden also asks that Berman "not discuss the Y&M vials with Neogen." *Id.* This response is consistent with Plaintiffs' argument that

they had provided free vials[1] to Tnuva in an effort to win their business. Eden, while helpful to Berman in terms of providing her vials, uses the opportunity to emphasize that the BioLumix instrument would be better to use to read the vials she has provided. It is clear from the discussion that the "algorithm" being discussed is that used by the Soleris device and not, as Defendant suggest, an algorithm that Tnuva is testing on behalf of Biolumix. Instead, Berman appears to be seeking assistance from Eden in using the BioLumix vials in the Soleris system - assistance which Eden is unable to provide. TNUVA 000151. Numerous references to "testing" and "trials" refer to Tnuva's testing of the new Biolumix vials to test their effectiveness. TNUVA 000164-000167.

There is no evidence that the Edens "orchestrated" the testing, nor is there any evidence that information gained from the tests by Tnuva was used to "validate" the Biolumix system, which Defendant argues infringed the '576 patent. Defendant's claim appears to be drawn from the weakest of inferences - namely that any use of the Biolumix vials by a potential customer constituted "testing and development" of the

---

[1] Ruth Eden states that "we are not looking for any payment." TNUVA 000170. Similarly, at TNUVA 000172, Berman states "I was not expecting to pay for the vials at that stage, when we still do not know how well they are working. [I]f we can prove this time that the vials can be used by the dairy and meet its expectations, then it won't be a problem." Ruth Eden responds "I have no intention of charging you for the vials at this point in time. We must first prove that they work for you!" Again, these exchanges emphasize that the Edens are providing Tnuva with the vials in hope of winning their business. There is no evidence that Tnuva is somehow assisting Biolumix in testing or developing their system.

Biolumix instrument. Defendant argues that because Tnuva used the vials (for its own purposes) in a Soleris system, this constitutes infringement on the part of Biolumix. The Court rejects this inference as not established by clear and convincing evidence, and finds that the e-mails are not "new evidence" sufficient to warrant setting aside summary judgment.

**ii. Sysmop Files**

Defendant's Motion to Supplement [355], filed on May 20, 2013, argues that documents belatedly produced by Plaintiffs with regards to "Sysmop," a company with which Biolumix did business, support their motion to set aside summary judgment as to the '576 patent. Defendant argues that "[s]everal of the documents produced further demonstrate Plaintiffs' efforts to hide their development and validation activities using Centrus' Soleris system." Def.'s M. [355] at 5. Defendant makes no effort to actually described the documents, instead directing the Court to review a number of exhibits. The exhibits are simply another copy of the Eden/Tnuva e-mails, discussed above, and are not made more persuasive by their presentation as new evidence.

Defendant also argues that a 2011 e-mail from Gideon Eden to "an undisclosed distribution group" describing "the new functions in **a BioLumix software upgrade relating to calibration and fluorescence**," supports their motion, and accuse

Plaintiffs of withholding information about the upgrade. *Id.* (bolding and underlining in the original). Defendant attempts to link this e-mail (which takes the form of a technical update) to their argument that Plaintiffs changed the BioLumix code to prevent calibration without vials. However, the e-mail is unrelated to this issue, and it appears that information related to the e-mail and the upgrade to the Biolumix software was produced to Defendant. Pls.' Resp. [363] at 3-4.

Defendant next discusses a "price proposal referring to mail received regarding a calibration algorithm." Defendant accuses Plaintiffs of not producing the "mail to which the price proposal refers," although the mail was, in fact, produced. Def.'s Reply [369] at 2-3. Defendant also argues that this document contradicts Gideon Eden's deposition testimony that all work he did with Sysmop was done in person. However, contrary to Defendant's argument, Eden's deposition contains the following exchange: Questioner: "When you had your meeting with Sysmop – you said that's how you conveyed what to do about the software?" Eden: "Yes." This exchange does not support Defendant's characterization of Eden's testimony or demonstrate that the price proposal contradicts said testimony.

Tellingly, in their Reply [369], Defendant focuses not on demonstrating how any of this "evidence" demonstrates that Plaintiffs infringed on the '576 patent, but complains about delays in discovery. While possibly relevant to Defendant's 60(b)(3)

arguments, discussed below, Defendant fails to provide clear and convincing evidence that is material to the question of infringement. The Court finds that the "Sysmop evidence" is not "new evidence" sufficient to warrant relief from summary judgment.

The remaining "evidence" presented in Defendant's Supplement is in the same vein, and consists generally of complaints about discovery, as well as speculation. The Court is not persuaded that any of this evidence is material to the '576 patent.

### iii. LD Tool Deposition

Defendant's Motion to Add a Second Supplement to the Motion to Set-Aside Summary Judgment [401] contains excerpts of the deposition of the representative of LD Tool, which produced prototype vials for Plaintiff. The deposition contains discussion of LD Tool's role in developing the vials, the subject of the '873 patent, which is not relevant to the instant motion to set aside summary judgment. The information in the deposition, discussed in more detail below, is not newly-discovered evidence material the question of infringement of the '576 patent.

### iv. Conclusion as to Rule 60(b)(2)

Defendant has failed to establish that the evidence discussed above is material and clearly would have produced a different result if presented before the Court decided the motion for summary judgment. Accordingly, Defendant's Motion to Set Aside pursuant to Rule 60(b)(2) is DENIED WITHOUT PREJUDICE.

## B. Misconduct and/or Fraud by Opposing Party

When a party moves to set aside judgment pursuant to Fed. R. Civ. P. 60(b)(3), based on "(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," the moving party must first demonstrate "by clear and convincing evidence that misbehavior falling into one or more of the three categories set out in Rule 60(b)(3) has occurred." *Venture Indus. Corp. v. Autoliv ASP, Inc.*, 457 F.3d 1322, 1333 (Fed. Cir. 2006) (quoting *Jordan v. Paccar, Inc.*, 1996 WL 528950, at *8 (6th Cir. 1996)).

Nevertheless, the accusations made against Plaintiffs by Defendant, despite often-unnecessary hyperbole,[2] are serious. The initial determination that must be made by the Court is whether Defendant has established by "clear and convincing evidence" that misconduct or fraud has occurred. The primary pieces of evidence presented by Defendant as evidence of misconduct are discussed below.

**I. E-mails between Edens and Tnuva**

As already discussed, Defendant argues that e-mails between Gideon and Ruth Eden and Shura Berman, representative of Tnuva, support their motion. While the Court has indicated that the e-mails are not material to Defendant's argument concerning the '576 patent, the non-disclosure of the e-mails by Plaintiffs is troubling.

---

[2]The Court notes that constant use of **bold underlined words** is not persuasive and does not add to the strength of arguments.

Defendant obtained the e-mails after serving letters rogatory on Tnuva, a third party to this litigation. Plaintiffs had, despite objections as to vagueness, responded to a discovery request for communications between Biolumix and Tnuva which "refer to Centrus, Neogen, the Soleris instrument, this lawsuit or any dispute between Centrus and BioLumix . . ." by stating that "BioLumix has no responsive documents in its possession, custody, or control." Def.'s M. [301] Ex. O at Request for Production No. 20. As it turned out, there were a number of e-mails between Gideon and Ruth Eden and Shura Berman[3] that mentioned Soleris and Neogen by name. Defendant obtained the e-mails from Tnuva and translated them from Hebrew. As noted above, the e-mails mention the Solaris device several times, and Centrus and Neogen by name.

Plaintiffs respond by citing the large amount of discovery that has taken place in this case, citing to "some 30,000 documents or more, plus numerous computer files, over 3,5000 vials and other materials . . . ." Pls.' Resp. [314] at 19. While discovery in this case has been extensive, Plaintiffs are not free to hold back what they characterize as a "minuscule number of meaningless documents . . . ." *Id.* at 18-19. The Court is also skeptical that the documents were simply "overlooked," as the e-mails specifically referred to Soleris, Centrus, and Neogen by name.

---

[3]Who is, according to the deposition of Ruth Eden, a former student and friend of Ruth Eden. Ruth Eden Deposition, May 23, 2012, at 133-34.

**ii. Statements in deposition contradicted by evidence**

Defendant notes a number of statements by Plaintiffs at deposition that are, based upon the evidence, untrue. First, Defendant points to the May 23, 2012 deposition of Ruth Eden, in which Eden is asked "Do you know when you first started working with Tnuva?" Eden answers "Sometime in '10." However, the Tnuva e-mails demonstrate that the Edens corresponded with and, by any definition, "worked" with Tnuva beginning in 2007. Ruth Eden also provides misleading testimony in response to the question "what prompted [Tnuva] to make the purchase [of the BioLumix vial] in 2010?" Eden responds that Tnuva "heard about our yeast and mold vial that does detect in 48 hours." However, while it does appear that Shura Berman contacted the Edens regarding their yeast and mold vials while they were still in development, this occurred in 2008, not 2010. Pls.' Resp. [314] at 9.

While none of the above contradictions appear to be material to the question of infringement, they do appear to support a finding that Plaintiffs engaged in misbehavior pursuant to Fed. R. Civ. P. 60(b)(3).

**iii. Deposition of LD Tool, stating that Plaintiff Ruth Eden asked him to lie in his deposition.**

As briefly discussed above, Defendant presents evidence from the deposition of Lawrence Dickson, representative of LD Tool & Die, Inc., a company that helped

the Edens develop the Biolumix vial. Dickson states he had a conversation with Ruth and Gideon Eden prior to his deposition. Dickson states that during this conversation, they discussed the upcoming deposition, and that Ruth Eden "asked me to say that I got all information through her and not Gideon." Dep. of Lawrence Dickson at 11. Dickson stated he responded "I don't lie." Eden responded "Okay." Dickson agreed with the question that "[t]hat was pretty much the end of that discussion." *Id.* at 11-12. When asked if he knew why Eden asked him to testify in that particular manner, he said he had "absolutely no idea." *Id.* at 11. The Court is also unclear why Eden would make such a request of Dickson, and Defendant makes no effort to provide an explanation.

Plaintiffs deny that Ruth Eden made this request, though they provide no evidence, such as a sworn statement, to support this denial. *See* Pls.' Response [408].

Dickson's statement, if accurate, would constitute evidence of "misbehavior" pursuant to Fed. R. Civ. P. 60(b)(3).

**iv. Conclusion as to Rule 60(b)(3)**

The Court finds that Defendant has presented evidence of misbehavior by Plaintiffs with regard to the various issues discussed above. However, the Court is not inclined to make a ruling as to whether Defendant has presented "clear and convincing evidence" of misbehavior without an evidentiary hearing.

## C. Remedy

This case first began in 2008, and has proceeded in fits and starts. At this time, the case is nearly ready for trial. Defendant has had ample opportunity to conduct far-reaching discovery, and has probed every aspect of Plaintiffs' development of the BioLumix device and vials. Nevertheless, as noted above, Defendant has failed to produce additional evidence that Plaintiffs' devices actually infringe on Defendant's patents. As such, the Court is not inclined to re-open discovery.

Nevertheless, the accusations made against Plaintiffs by Defendant are serious. Defendant accuses Plaintiffs of deliberately undermining their efforts to obtain discovery. Faith that the parties will follow the rules of discovery is a bedrock of our legal system, and actions that undermine this faith are inimical to fair litigation.

The initial determination that must be made by the Court is whether Defendant has established by "clear and convincing evidence" that misbehavior has occurred. The primary pieces of evidence presented as evidence of misbehavior are:

a) The belated production of the e-mails between Tnuva and the Edens.

b) Various contradictions in the testimony of the Edens.

c) The LD Tool deposition.

As noted in the Court's analysis regarding the newly-discovered evidence, above, none of the documents or revelations in question are relevant toward the

ultimate question of infringement. For example, the statement at the deposition of Lawrence Dickson that Ruth Eden asked him to state that "I got all information through her and not through Gideon," is extremely serious. However, the deposition itself contains no evidence relevant to the question at hand, that being Defendant's motion to set aside summary judgment on the '576 patent. Indeed, the deposition concerns deponent's assistance to Plaintiffs in designing their vials, which Dis the subject of the separate '873 patent and is not at issue in this motion.

The Court believes that these accusations of misbehavior are best resolved by an evidentiary hearing, to be held by the Special Master, who is familiar with the litigants and this case. Defendant will have the opportunity to establish that clear and convincing evidence of "misstatements, fraud, or other misconduct" exists, and Plaintiff will be given the opportunity to respond with argument as to why the alleged Fed. R. Civ. P. 60(b)(3) violations had no prejudicial effect on this litigation. Even if the litigation itself has not been prejudiced, sanctions may be appropriate if misconduct has occurred, and the Court will consider the recommendations of the Special Master as to any sanctions.

Accordingly, the Special Master shall hold an evidentiary hearing, as soon as practicable, to inquire into the troubling issues discussed above. Plaintiffs Gideon and Ruth Eden are ordered to attend this hearing and Defendant's will be permitted to take

testimony from them, confined to the issues discussed above, namely, evidence that supports Defendant's motion pursuant to Rule 60(b)(3). At the hearing, the Special Master will determine what explanation, if any, exists for the alleged misbehavior and will, if necessary, recommend sanctions.

No additional briefing will be permitted prior to the evidentiary hearing, nor will the Court entertain motions requesting such.

## CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant's Motion to Set-Aside Summary Judgment [301] is **DENIED, IN PART, WITHOUT PREJUDICE** as to Defendant's Rule 60(b)(2) arguments. Defendant's Motions to Supplement [355] and [401] are **GRANTED**. Defendant's Motion to Strike [347] is **DENIED**.

**SO ORDERED**.

Dated: August 20, 2013

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge